is in session and we will hear the argument in the final case of the day, United States v. Clark, appeal number 18-2604. Mr. Hillis. May it please the court, counsel, my name is Daniel Hillis, I represent Michael Clark, I'm with the Federal Public Defender's Office, and I'd like to jump right in with the Franks hearing issue that we've raised here in the case. So, we have a disagreement with the government about whether or not the court found that the materials were material for purposes of the omissions, and the district court and the magistrate judge both considered them as material, included them, and reformed the affidavit, which I think is pretty strong evidence that, across the board, these were considered to be material omissions. You don't reform the affidavit with the materials unless they satisfy the Franks requirements. And so that's what we have here. We're not talking about something that was immaterial, we're talking about significant information that, once reformed, cast the affidavit in a new way and had to be reconsidered, had to be considered differently. But there's an additional aspect of this, and that is, once you include the omitted information, what does this do for the totality of the circumstances? And the government's view is nothing. We don't have to consider that at all. All we have to look at is the information now in the reformed affidavit, and I think that that gives the government a significant pass, and I don't think that should ever be the case. If a witness omits information, it necessarily affects the credibility and reliability of the information, such that you need to then examine it more closely and look to see if it's corroborated, if there is any video, if there are controlled buys, if there's recovery of drugs. Because if a person can simply omit information and wait to see if they get caught on it, we're not doing much for Franks to police this, to make sure that we have the necessary information that's included. There has to be some aspect that comes with the omitted information that speaks to the importance of what was omitted and how that affects witness credibility under the totality of the circumstances per gates. I think that's actually pretty well articulated, as you just did. Where, though, does this fall down? So if we're going to... I mean, I think what you just said is quite sound. Where does it fall apart, though, here? Because you've got to then apply the facts right to that rubric that you just outlined. And there's a fair bit of corroboration, correct? Well, there isn't exactly, Judge. I guess it depends on how you're approaching this. So there's additional information that is offered from the officer that's in his affidavit, but we can't consider materials that are about the mom on the mission. She has problems about being untested and her reliability and so forth. There were never any recoveries. That's why I thought it was important about the lack of video evidence or recovered hand-to-hands, anything like this. We have a police officer who's sort of been caught leaving out things that any well-trained officer should know to include, and then we're asked to believe everything else that he says. So you said we have to just... I mean, the mom's on the mission because the daughter's hooked on heroin, right? Right. So ignore all that? Ignore the mom on the mission totally? Because the mom on the mission was the one that... I don't remember the hotel room number, like room two something, right? Right. Pointed this investigator, Moss, to that hotel room, but then Moss himself parked on the location and saw five or six people. He didn't see hand-to-hands, but he saw what he thought were circumstances indicating drug exchanges or something. Right. And we, of course, don't have much by way of his training and experience. That's boilerplate. We don't know what the mom could really know. She has a daughter who has a drug problem, she says, but I think having a hearing and getting to examine these people and find out what did they see, what did they learn, and know more about them by way of assessing their credibility and reliability, that doesn't happen when you allow this short-circuited means of the new information coming in without any attendant consequences for there having been the omission in the first place. And if a person's an agreed person, Judge Scudder, that often affects their reliability. It lets you examine what their perception was of things. I feel badly for anybody... This is the mom, right? Yes. Yes. And not to mention, the CI, of course, has lots of problems about reliability, et cetera. I think this puts us in a different scenario that doesn't allow us to simply reform the affidavit and take no additional action, don't consider any additional facts. Mr. Hillis, I was troubled by something that the magistrate judge said in the district court here. He seemed to be thinking that an inference of recklessness from the omission was required under Glover. I had understood Glover to say what's required here would be a Frank's hearing. And the choice between recklessness, negligence, or some other explanation is really left for fact-finding at that hearing. Do you agree with that? I do. I think that's another reason there should have been a hearing. And again, it wasn't. We're not just complaining about the lack of a hearing, though, Judge. We are concerned also about the procedural aspect of this. Was there, in fact, the totality of the circumstance test done a la Gates? And there wasn't, because we have something that is totality light. We have something we have to rename the test. It's almost a totality, I guess. But that's not what Gates says. So on the issue of whether there would be a hearing on the motion to suppress, which I understand to be a logically and factually distinct issue about when the search warrant was executed, is there any evidence other than the photograph of the clock itself that the clock was correct? The only evidence we have. But I think it is also the only evidence we need. So this is kind of like summary judgment, in a way, if I just draw an example. Right. But if it were summary judgment, we'd have to have an affidavit from somebody saying that, in essence, the clock is correct. I don't think you'd have to say, you say the clock said 8.15. Yeah. Okay. And then it's for the district court to hear the parties and determine whether it's correct. Here's where I think there's a problem when we're requiring affidavits. We're putting people in a perjury trap, an obstruction trap. I understand that. I'm sorry, Judge, go ahead. No, I get it. But please go ahead. So we do things at the disadvantage of defendants in lots of ways. The government can put in a version of the offense, for instance, in PSR. You could have lots of things that are wrong with it. They don't get tagged with loss of acceptance, obstruction of justice. We have defendants, you don't have your clients talk to the probation officer or give a version of offense for worry that something be wrong in there. You lose acceptance, you get obstruction. It's a five point swing nobody wants to swing on. So I think that we don't have an affidavit requirement. We've never had an affidavit requirement. And that was a problem where the government says that we've misstated the evidence or what the record was. The magistrate judge very definitely said that you have to have an affidavit. And the district court referred to the lack of an affidavit. But an affidavit's not required. You just need a disputed fact. And it's corroborated here via the picture of the clock, Judge. So he may not win, but he gets a hearing on it. And he can explain what his reasons are. And ultimately, I forget what the magistrate judge said about, you know, if you hear hooves, you think horses, not zebras. He made some reference to Occam's razor. Lots of colorful things. I like colorful. But I also like hearings. When did you find out about the clock? When? Yeah. The discovery from the police when they turned it over to the defense. I'm not certain the date, Your Honor. No, I mean, before, during, or after. You didn't get in until after the case was over. Right. Who raised the issue and when? Oh, it was raised in the district court, first to the magistrate judge and then to the district court. I don't recall the dates, but it was definitely a feature. The government did a fine job trying to explain an alternate reason for why the clock may have had a different time. But then the defense countered with an explanation about how metadata can be changed. It just necessitates a hearing. But it was all squarely presented to both the magistrate judge and the district court judge Bauer. So, we think that should be enough to get through the door on a probable cause hearing. If the court has no further... Motion to suppress. Yes. Okay. I beg your pardon. Where the probable cause would be, you know, at issue during the suppression judge. So, if there was a warrantless search, that would be a problem given the lack of evidence. Moving on, the suppression about the clock is, I think, sufficiently established. But there's an additional problem here that goes to the sentencing. And if we don't get to have new hearings or a hearing, we should certainly get a new sentencing under 5G 1.3 B2. The government tries to parcel out the offenses and say that what happened in Illinois is distinct from what happened in Wisconsin. And therefore, there should be consecutive time. The 71 months that he got in the previous Illinois case is fully consecutive to the time that he got in Wisconsin, which is 120. But this is all drug sales. They're part and parcel of the same conduct. And the PSR made clear that he kept his drugs up in the Chicago area. He went and he got them and he sold some of the drugs in Wisconsin. This is very definitely relevant conduct under what the guidelines describe as relevant conduct. But the government tries to say that... I wish it was even with people in Wisconsin for all that cheese. Right. Well, I wish it was only cheese. But it's not. And it led to a 120-month sentence. That's a big addition to the 71 months that he's doing for the same essential conduct in Illinois, Judge. And so he's been punished, but he shouldn't be punished twice for the same... What was the time difference between the offense conduct? I think a lot of it was simultaneous, Judge. But there was conduct that he engaged in... I thought the Chicago case was many months after the search of the Wisconsin hotel room here. That's true. I'm sorry. I was trying to explain further. So there was additional drug sales that happened after his arrest in Chicago. But the point was, if you're warehousing all of your drugs in a place and you're selling them multiple locations, I think that's still relevant conduct so far as the commission intended the term. And I've not seen case law that allow you to snap off different parts of a single event and call them discrete offenses for purposes imposing consecutive time under 5G 1.3b2. The government cited none. I think that this is a bad policy if it's not inconsistent with what the guidelines say on this, because it's going to allow prosecutors to lengthen people's prison sentence by having serial prosecutions for what is, in fact, the same drug conduct. And say what you will about the war on drugs or about criminal justice, the guidelines thought that this was a significant enough possibility that it included text in the guidelines under 5G 1.3b2. You think on this point we are reviewing for plain error? I... And the reason I ask it is because that's on my mind when I think about this particular issue, because I'm not sure the government would agree entirely with how related you see the conduct, because there are some differences. I mean, Judge Hamilton's right, they're separated by seven months. And in Wisconsin he was selling small bags, but in Illinois he fronted a larger quantity and what have you. And I don't know. I mean, and so we'll review... I don't know whether they're entirely related or not. I mean, there's a lot of indicators that they are, but we're reviewing for plain error and there's some indicators they may not be. So how does that come out? Well, I would like to think that we're reviewing de novo because the guidelines are supposed to be correctly calculated and they were not. We certainly didn't have a waiver here because this wasn't something that somebody would intentionally give up this argument. No, I think you're right, but I agree with that. So the plain error to that judge, I'd say, mentioned Jenkins earlier in the day and that's criminal history, but if the end result is that through an improper application of the guidelines, somebody is in prison for a longer period of time than they should, then that satisfies plain error because we then have a failure to properly apply the guidelines that would be... But it kind of assumes that the error is clear, right? That we accept that it really is. I mean, it's obvious this is relevant conduct. I think that it is, but we should... I think based on what the PSR said, I don't understand how we would say it's not. If we know that in the region, in the area, these two states butt up against one another within roughly the same period of time, I would have a hard time coming up here trying to tell you if I was on the other side of this that my client should not be held responsible for relevant conduct. I think I can imagine circumstances where I'd lose acceptance of responsibility for a client where I were to say, well, right, he warehoused all his drugs in one place, he sold them contemporaneously, more or less, same substance, same MO, all of this stuff, and yet somehow I'm going to tell you today that it's not relevant conduct and those additional 700 kilos should come off the board. Does the intervening arrest make a difference in that calculation? I don't think so. It didn't end with criminal conduct, Judge. So we're looking at what the offense conduct is, right, and the relevant conduct. So he's got two different arrests, but nevertheless, with the same sales of the same substance, some differences, but I don't think enough that we can say it's no longer relevant conduct. Relevant conduct's a pretty broad thing. I have clients who wish that it wasn't, but in this case, we're going to try to use it to our advantage and say that it benefits my client as the commission saw it, and so we'd ask for relief. Okay. Thank you, Mr. Hillis. For the government, Ms. Pflugert. Good morning. My name's Julie Pflugert. I represent the United States. So there's four or perhaps five different issues depending on how you look at them, and three of these have been either waived or forfeited, so that's where we start with that standard of review. One of them that Mr. Hillis didn't bring up is because with the condition of supervised release, we agreed to a limited remand just to fix that condition, so now we're dealing with just four issues. The one issue that wasn't waived or forfeited is the issue about the clock, and that was the issue where there's the clock. It says 8.15, and this is reviewed for abuse of discretion. So what the magistrate judge and the district court judge said about that was that there wasn't an affidavit, but they didn't say one was required. What they said was that you only get an evidentiary hearing. It's only required when there's assertion that has factual support, that is non-conclusory, that's definite, specific, and a picture of a clock doesn't satisfy that, especially when the government has given the metadata that shows that this clock, the picture of this clock was taken at a specific time. All the reports from the police officers say the same time, so to ignore all that and say, well, this picture, it doesn't say a.m. or p.m. It just says 8.15, so for all we know, it could be 8.15 a.m. This picture that says 8.15 is all you need, and we don't need anything else, and this makes it non-conjectural, and what the district court said was this isn't enough. We're going to look at the reports. We're going to look at the metadata, and the Google search saying that metadata can be altered isn't enough to make this a non-conjectural issue, and that is not an abuse of discretion. As to the next issue, as for the Franks hearings, so what happened at the lower court was that the defense raised the issue that the CI and the person the CI talked to. Their credibility was at issue. They never raised Investigator Moss's credibility. They never raised the lack of his background or experience in district court, so these are brand new issues that are being presented here. Frankly, I don't see this waiver. I see an amplification of an argument well developed in the district court and better developed here, which we see all the time, so why not a Franks hearing given the very serious omissions regarding the CI here, or as he was designated, the confidential reliable informant in the affidavit? Well, Your Honor, I do disagree with your point that this is just an amplification. In the district court, what the motion said is we are challenging the CI's credibility and the CI's passenger's credibility. Now, this is a different issue. However, if you do see this as an amplification, what the district court looked at was the totality of the circumstances. You can't just disregard this mom on a mission. You can't disregard that she went up to room 203. So you want us to put weight on her, the information that she provided? I think that the district court considered everything as a totality. Okay. And I don't think that saying Investigator Moss's credibility is at issue just makes it at issue. Well, let me put it this way. If Investigator Moss was so well trained, how could he have thought that he could get a search warrant based on a confidential informant's report without telling the judge that the informant was paid for this information, that he had 15 prior convictions and two pending charges and a history of drug abuse? Well, as your tracker noted in a footnote, that in his 20 years of reviewing search warrants in the federal system, he has rarely if ever seen when a confidential informant is information is disclosed because under Wisconsin law, that's not required. In Wisconsin search warrants, that is not what's done. He said he found Investigator Moss recklessly disregarded because he thought that is what was required under this circuit's law. But his footnote insinuates that he would have found Investigator Moss credible even knowing all of this. All of this without a hearing, right? Yes. And so what the district court did, they looked at what he observed, not only what he observed, but what his colleague observed. He looked at the mom on the mission. He took the information that the hotel clerk desk said that this is cash and it's a one night stay. And also to say that Investigator Moss' background and training isn't in the search warrant. I may be missing something. Did the prosecution divulge to the defense any part of this background of the Tell the defense lawyer that these guys got three priors? Not in the affidavit for the search warrant. What the affidavit for the search warrant said was that the CI had provided credible information. Did they ever get around to telling the defense lawyer what the circumstances were before trial? In the federal court, yes. Yes, we have disclosed before Judge Crocker made his ruling, we disclosed the complete background. It was available to the defense counsel for cross-examination? Well, we didn't have a hearing, so there wasn't a cross-examination, but yes. Am I misunderstanding? No, I know I'm missing it. It just seems to me at what stage of the game did the defense lawyer know about all this? So this was a state search warrant, and so when the search warrant was issued, the state judge did not know. Then when it came to the federal court, the government disclosed this information, and the defense challenged it with the magistrate judge. So at that point when it was challenged in the district court, the defense attorneys knew the CI's complete background. And so what Judge Crocker found was that this wouldn't have made a difference because of the rest of the circumstances that supported the search warrant affidavit. Did that answer your question? The point you were making about Wisconsin law, I think is just the investigator, Moss, may not have been reckless as far as like a measurement of his mental state, because this isn't the way it's practiced in Wisconsin, right? But I don't think it's neither here nor there what state law is right when you're talking about triggering Fourth Amendment inquiry. In other words, maybe the Fourth Amendment requires this information in the warrant affidavit regardless of whatever a state thinks might be proper. In my information on that, since I've never practiced in state court, only comes from Judge Crocker's footnote. But what Judge Crocker did... There's been a couple cases in our court on this where we talk about the importance of this. It's not there, and the contrary state practice might be the explanation. It's not very satisfactory, but it might be the way to explain it. Yes, and I think what Judge Crocker said is even if you put this information back into the search warrant, there is probable cause. He said by looking at the totality of the circumstances, and he said that like what the defense relies on is Glover, but what Judge Crocker and what the government relies on is Hancock. And so Hancock is similar to this case. Hancock is a case where CI information was left out of the search warrant, and the defense asked for a hearing, and that was the CI information and background is left out. That does not lead to a questioning of the credibility of the agent, and it does not automatically lead to a Frank's hearing. So that was a specific holding in Hancock, and that is very similar to this case. When it happened in Glover, that got a Frank's hearing because the only information in the search warrant was the CI. But here, as in Hancock, the information from the CI was backed up and supported by other information. And again, especially the background and training of Investigator Moss, that was never raised at the district court level. Had it been, this would have been addressed there, and the government would have responded then like we are now. So this is a brand new issue. Also, what the defense says is they equate this case to a case where there is absolutely no information in a search warrant affidavit about training experience. Whereas Investigator Moss did have general information. He said over 20 years as an investigator, he was now in the drug task force, he had training, he had job experience, and he had classes. Now, he could have been more specific, but it is not in complete dearth of information about his background. How about the relevant conduct, concurrent sentence point? Mr. Hillis makes some pretty good points, right, about the similarity of the conduct? Well, I would disagree with that. As the court noted, there's seven months in between, and I'm just going to turn to this page in my notes. There's seven months in between his conduct. The conduct in Wisconsin was from November. The conduct in Illinois was the following June. The conduct in November was very small amounts of fentanyl heroin that was in individual bags. The conduct in Illinois was a large amount. And there's case law that says when transactions are separated by time and place, that they are not necessarily considered part of the same occurrence. So when you look at this for abuse of discretion, the court did not... Sorry, this is not abuse of discretion. I'm sorry. That was my mistake. When you look at this, this is another argument that we would argue. I understand what you said earlier, that you didn't believe that this was waiver of forfeiture, but the government is arguing this is waiver of forfeiture. This was put in the PSR. The PSR said 5G 1.3 can be applied to determine how to structure the sentence. There was no objection to that. And then the defense in their sentencing memo said, we think that the federal sentence should be concurrent to state sentences without mentioning anything about the Northern District of Illinois federal sentence. In my sentencing memo, I put they should run consecutive. This was clearly flagged for the court and for the defense. And it was never brought up at sentencing, no objections to the PSR. So thereby not responding or not addressing this issue, this was either forfeited or waived. And then when you look at this court's decision in Schrade, this court held that committing offenses on multiple occasions does not mean it's the same course of conduct. This is November, October 14, 2015, he's arrested in Wisconsin. June 13, 2016, he's arrested in Illinois, right? So that's quite a period of time, different quantities of drugs, different styles of packaging. And I believe if the government would have tried to indict these as all one incident, there would have been objections to that. Oh, that's interesting. Really, no 846 conspiracy could be alleged here? I mean, they're separated by such time and there's no indication that, right, there isn't... No, no, no, on the front end more, that the investigation was shown he's dealing in Wisconsin, he's dealing in Illinois, he's traveling back and forth, you know, from time to time. And sometimes there's going to be transactions here and there, and they're just axing further until the defendant is acquitted. So the conduct in Wisconsin, there was one text that said that he had been getting his drugs from Chicago. That's the only Chicago tie that we knew of. So to say that this is just the same course of conduct when it's so separated by time and it's a different type of transaction to us doesn't seem like, not only like it was possible for a single charge, but like relevant conduct. And additionally, the Northern District of Illinois specifically said we are not sentencing him to the 72 months. They said we aren't going to consider that. So therefore, when our district looked at it, they didn't consider it relevant conduct. And 5G 1.3 and the sentencing guidelines, this is just advisory to begin with. So they looked at the guidelines, determined that it wasn't the same, and without objection, did the If there's no further questions, I ask that this court remand just for the limited purpose of clearing up that one condition of supervised release. What our probation and parole office now has done is the condition says that the defendant cannot associate with gang affiliates or gang members. They're going to take out the word affiliate because the word affiliate is the questionable word here. So it will, in the future, just say gang members. Thank you. Okay. Thank you, Ms. Kruger. Mr. Hillis, rebuttal? That's it. He talks fast. The government cited Schrodinger. We would cite Nanya. I think Nanya is the better case. Schrodinger was a very unusual case, and it really came, the court didn't say anything about confining it to its facts, but it seemed to be something that was particular to its unusual facts. The government said that the officer, the investigator, had 20 years of experience. That's fine, but 20 years of experience doing what? If you were on desk duty for 19 and three quarters of your 20-year career, then it may be relevant to instead describe how significant your drug experience is. That wasn't done here to give us much context for how are we to put stock in the observations of the investigator here. The government says that there was a totality of the circumstances analysis, but there wasn't because we know that there weren't things that were considered, ergo no totality. It's pretty simple. And then if the government wants to get federal strength sentences, it should stop getting state-like warrants. If they want to confine these matters to Wisconsin, fine, go with Wisconsin law, but also take these things federally only when you've got a federal warrant. Otherwise, leave the state cases to the state of Wisconsin, where maybe you get better sentences, maybe you get additional protections, but you can't come in and ask for everything to be assessed based on a Wisconsin warrant that's defective. We need to Thanks to both counsel. Case is taken under advisement. Court will be in recess until tomorrow.